**SO ORDERED: April 21, 2011.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| MARK G. HANSELMAN, | ) | Case No. 05-73342-BHL-7 |
|        Debtor | ) | |
| _____ | ) | |
| PEOPLES TRUST | ) | |
| AND SAVINGS BANK, | ) | |
|        Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 06-AP-57024 |
| | ) | |
| MARK G. HANSELMAN, | ) | |
|        Defendant. | ) | |

**JUDGMENT**

This matter comes before the Court on Plaintiff Peoples Trust and Savings Bank's **Complaint to Determine Dischargeability of Debt** against Debtor/Defendant Mark G. Hanselman filed on February 9, 2006. Peoples Trust and Savings Bank ["Peoples"] filed two proofs of claim in Hanselman's Chapter 7 case: Claim 1-1 was filed on November 30, 2005 based on Loan No. 204585 filed in the amount of $380,760.87 secured by real estate, inventory and equipment liens, and Hanselman's personal guarantee; and Claim 5-1 was filed on December 21, 2005 for Loan No.

205918 filed in the amount of $47,311.31 secured by a 1997 Mitsubishi catering truck. At trial, Peoples limited the scope of its Complaint to seeking a determination of nondischargeability regarding Claim 1-1 pursuant to 11 U.S.C. § 523(a)(2)(B). Hanselman filed an **Answer** on March 6, 2006. With permission of the Court, Peoples filed its **Amended Complaint** on November 21, 2007[1]. A trial was held on January 18, 2011. The Court took testimony and entered Plaintiff's Exhibits 1-14 and 16-18 and Defendant's Exhibits A-C into evidence. The Court took the matter under advisement and the parties were given ten days to file post trial briefs. Peoples filed **Plaintiff's Post-Hearing Brief** on January 28, 2011. Having reviewed the foregoing, and being otherwise duly and sufficiently advised, the Court now makes the following Findings of Fact and Conclusions of Law:

Background

On March 24, 2004, Mark Hanselman submitted a Personal Financial Statement ["PFS"] to Peoples Trust and Savings Bank for the purpose of procuring credit to complete the financing of a restaurant venture in the name of Frizz, Inc. (Plaintiff's Exh. 1). At the time of the transaction with Peoples, the restaurant "build-out" was substantially completed and Hanselman was in the process of obtaining equipment for the restaurant. Hanselman was actively pursuing a loan with several other banks when he was approached by Mark Fitzgerald ["Fitzgerald"], a loan officer at Peoples, about obtaining financing through Peoples. Fitzgerald encouraged Hanselman to present his loan package to Peoples for consideration, which Hanselman subsequently did. Fitzgerald knew that Hanselman's family owned and operated a successful restaurant in Jasper, Indiana, but was otherwise

---

[1] Peoples' Amended Complaint added a section 727 denial of discharge claim. By stipulation of the parties, Peoples is not pursuing a 727 action.

unfamiliar with Hanselman, both personally and professionally. The President of Peoples Bank, Mark Hendrickson ["Hendrickson"], testified that restaurant loans are considered "high risk" loans.

The PFS prepared and signed by Hanselman lists a net worth of $845,441. Included among $964,041 in assets, Hanselman notes IRAs and mutual funds, stock, real and personal property, as well as accounts receivable. Hanselman also disclosed liabilities of $118,600, which consisted of a modest debt to Freedom Bank and a real estate mortgage. No supporting documentation was presented with the PFS and no further information was requested. No financial statement was requested of the borrower, Frizz, Inc. On April 16, 2004, Peoples loaned $456,783 to Frizz, Inc. d/b/a Fritz's [the "Note"] (Plaintiff's Exh. 2). This Note was secured by a lien on the equipment purchased for the restaurant, inventory, a mortgage on real estate, as well as Hanselman's personal guarantee (Plaintiff's Exh. 3). Hanselman filed Chapter 7 bankruptcy on October 14, 2005.

Peoples now seeks to have Hanselman's guarantee on the Note declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). It is Peoples' position that Hanselman, by and through his PFS, provided Peoples with materially false information with respect to his financial condition, upon which Peoples reasonably relied in order to advance funds pursuant to the Note, and that Hanselman did so with intent to deceive Peoples.

<u>Analysis</u>

A creditor seeking to except a debt from discharge pursuant to Section 523 bears the burden of proving by a preponderance of the evidence that the exception to discharge applies. *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995). In order to prevail on its § 523(a)(2)(B) claim, Peoples must prove each of the following: (1) Hanselman made statements in writing; (2) that are materially false; (3) the statements concerned Hanselman's financial condition; (4) that Peoples actually and

3

reasonably relied upon Hanselman's misrepresentations; and (5) that Hanselman intended to deceive Peoples when he made the misrepresentations. *Id.*

There is no controversy as to the first and third element - it has been established that Hanselman completed and signed the Personal Financial Statement on March 24, 2004. Likewise, the Court finds that the PFS was materially false. Hanselman listed his interest in Hanselmans Inc. and MGA Family Group as "US Gov. Securities" valued at $158,425.00 and $116,200, respectively. Hanselmans Inc. and MGA Family Group are not US Gov. Securities, rather they are two closely held family corporations in which Hanselman had an interest. The Chapter 7 Trustee subsequently administered Hanselman's interest in these family corporations for $70,000.00 and $20,000.00 respectively (Plaintiff's Exh. 8).[2] Hanselman's PFS listed an additional interest in "Other Marketable Securities" of $124,450.00 but failed to disclose the identity of that interest.[3] Also, Hanselman included $243,000.00 of "Notes and Accounts Receivable" which were, in fact, two notes made to Hanselman from former failed business entities owned solely by Hanselman, namely, St. Nick's and Frizz, Inc.[4] On Hanselman's bankruptcy schedules, no asset value was listed for

---

[2] The Court does not find that the PFS valuation was materially false. The testimony indicated that the listed value came from the books of Hanselmans Inc. as conveyed to Hanselman by his sister. The fact that it generated less for the estate merely reflects the difficulty in realizing value for a minority interest in a closely held corporation.

[3] Hanselman testified, at his deposition on November 22, 2010, that the "Other Marketable Securities" represented his interest in H Properties. Hanselman executed a Partnership Purchase Agreement for his interest in H Properties on December 30, 2003 whereby he was to be paid $121,005.50 within sixty days of the sale (Plaintiff's Exh. 9).

[4] It would have been particularly helpful for the Bank to ask the identity of the parties who owed Hanselman these debts. Not only is it impossible to value the accounts receivable without knowing who owes them, but in this case, it would have revealed that Hanselman had already loaned a substantial sum of money to Frizz, Inc. (the borrower).

Hanselman's interest in either St. Nick's or Frizz, Inc. so it would appear that the two notes were worthless. Additionally, Peoples accuses Hanselman of failing to disclose a $74,512.50 liability to Spencer County Bank (Plaintiff's Exh. 11), although the date of such note post-dates the PFS.[5]

Hanselman signed the PFS declaring that "I/We furnish the foregoing as a true and accurate statement of my/our financial condition" (Plaintiff's Exh. 1). Based upon the foregoing, however, the Court finds that there were several significant inconsistencies or "untruths" in the PFS. Because a financial statement is materially false if it contains "an important or substantial untruth", *In re Bogstad*, 779 F.2d 370, 375 (7th Cir. 1985), the Court must conclude that Hanselman's PFS was materially false at the time he signed it.

## Reasonable Reliance

The fourth element that Peoples must establish under 523(a)(2)(B) is that it "actually and reasonably relied upon" Hanselman's misrepresentations. "The reasonableness of a creditor's reliance should be determined on a case by case basis." *In re Contos*, 417 B.R. 557, 566 (Bankr. N.D. Ind. 2009) (*citing In re Bonnett*, 895 F.2d 1155,1157 (7th Cir. 1989)). Two factors to consider when determining whether a creditor's reliance was reasonable are (1) whether the creditor's standard practices in evaluating credit-worthiness were followed and (2) whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate. *Id. (citing In re Phillips*, 367 B.R. 637, 645 (Bankr. C.D. Ill. 2007)). Based upon that criteria, this Court concludes that while Peoples may have relied upon the PFS, its reliance was not reasonable.

---

[5] The Spencer County Note is dated December 17, 2004. Peoples speculates that this Note may have been a replacement note but no prior notes to Spencer County Bank were produced in evidence.

In this case, Peoples did not follow its standard practices in evaluating Hanselman's credit-worthiness and ignored numerous red flags which would have alerted Peoples to the possibility that the PFS was inaccurate. Hendrickson testified that restaurant loans are considered high risk, and although it is the practice of the bank to run a credit check when a person applies for a loan, it is unclear whether a credit report was obtained in this case. No report was produced in evidence and Hendrickson admitted that he didn't recall the contents thereof. If any investigation was done, it was completed after the loan application was already approved. But if Peoples had obtained a credit report, Hanselman's allegedly undisclosed obligation to Spencer County Bank would have been discovered, among other things. Hendrickson further testified that no titles, appraisals, or other securities were produced at the time of the loan application. Finally, despite Hendrickson's testimony that Peoples would typically require a specific itemization of accounts receivable, no such inquiry was made of Hanselman as to his purported $243,000.00 in accounts receivable. If the Bank had followed its standard practice, it would have quickly discovered that the listed accounts receivable were uncollectible.

The "red flags" on the PFS include a plethora of inconsistent, missing and mislabeled assets. Despite the existence of those incomplete or partially complete disclosures, Hanselman testified that Peoples never asked any questions or asked for additional documentation. His testimony in that regard was not disputed. Even a minimal investigation of Hanselman's credit-worthiness would have revealed substantial inaccuracies in the PFS.

The Seventh Circuit has recognized that, in considering the reasonableness of a creditor's reliance, the court should not "undertake a subjective evaluation and judgment of a creditor's lending policy and practices," *In re Garman*, 643 F.2d 1252, 1256 (1980), nor use the requirement to

6

"second-guess a creditor's lending decisions." *In re Morris*, 223 F.3d 548, 553 (2000). So while "the concept of reasonable reliance does not generally require creditors to conduct an investigation prior to entering into agreements with prospective debtors," *Id.* at 554, a lender may not ignore evidence of deceit and expect the court to later grant an exception to the debtor's discharge. *In re Bogstad*, 779 F.2d 370, 372 n. 4 (1985).

Peoples bears the burden of proof on all the elements of nondischargeability. It is this Court's opinion that Peoples ignored the obvious red flags in Hanselman's PFS in its zeal to do business with him and treated the PFS as a mere formality to the loan. The Court finds that the bank has failed to satisfy its burden of proving, by the preponderance of the evidence, that it reasonably relied on Hanselman's representations as to his financial condition.

Intent to Deceive

The final element under section 523(a)(2)(B) is intent to deceive. While a creditor can prove intent to deceive through direct evidence, *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995), it may also be inferred where "a person knowingly or recklessly makes a false representation which the person knows or should know will induce another to make a loan." *Id.* (citations omitted). Hanselman testified that he "wasn't very good" at filling out "those forms" and that he relied, in part, on figures that had been obtained from an accountant in order to value his interests in the family-owned companies. Admittedly, the PFS contained inaccurate and incomplete information but the evidence produced at trial indicates that the figures which Hanselman produced represented his best efforts at completing the form. Hanselman was not sophisticated in financial matters and he testified that he didn't believe the financial statement was incorrect at the time he completed the form. Based upon his testimony, and many of the inconsistencies found on the face of the PFS, the Court is

inclined to believe that the form was not completed in bad faith as much as it was just completed poorly. The Court is not persuaded, therefore, that Hanselman possessed the requisite intent to deceive.

### Conclusion and Judgment

The Court, based upon all of the foregoing and finding that Peoples has failed to prove the necessary elements of its 523(a)(2)(B) claim by a preponderance of the evidence, now enters JUDGMENT IN FAVOR OF DEBTOR/DEFENDANT. Peoples' claim of nondischargeability as to Claim 1-1 is, accordingly, DENIED.

**IT IS SO ORDERED AND ADJUDGED**.

###